No. 14,696.

McPHEE *v.* THE PEOPLE.
(100 P. [2d] 148)

Decided February 13, 1940. Rehearing denied March 18, 1940.

540

Messrs. MORRISSEY, MAHONEY & SCOFIELD, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, for the people.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

McPHEE, plaintiff in error, also hereinafter designated as defendant, was charged with and convicted of burglary with force and sentenced to serve a term in the penitentiary. To review the judgment of conviction he has sued out a writ of error and asks that the writ be made to operate as a supersedeas. Defendant did not take the witness stand. Briefly, the facts are as follows:

December 21, 1938, about 8 p.m., McPhee hired a taxicab, and, after picking up his sister and stopping at a beer parlor, directed the driver to go "to the D. & R.G.W. yards, down by the commissary." Leaving the driver and the sister in the taxi, he disappeared in the railroad yards. About three-quarters of an hour later he returned in another taxi. He again disappeared in the railroad yards and returned in about thirty minutes, forcing the driver at the point of a gun to permit him to operate the car. Driving the taxicab into the railroad yards, Mc-Phee then took the car keys from the driver and again disappeared in the yards. The watchman for the railroad company, who knew McPhee as a former employee of the D. & R.G.W. Company, stopped him at the time of his first visit. When McPhee told him he was looking for friends, he was told to get out of the yards. About 11:30 p.m. the watchman again saw McPhee, this time

in the toolroom of the shop, where, as appears from the testimony, the burglary was committed. McPhee, as an employee of the company, worked in the toolroom on and off approximately three years prior to December 21, 1938. As the watchman approached the toolroom he heard the sound of breaking glass, and discovered a window in the toolroom to be wide open, which shortly before was closed. He focused his flashlight on the person in the toolroom and recognized McPhee. At that time he called upon McPhee to surrender, who, replying that he had his gun on the watchman, fired a shot toward him and then jumped out of the building through the window. After that he fired one more shot. A search of the yards followed, with the result that McPhee was found under a railway coach. Five electric drills belonging to the railroad company, and which had been taken from the toolroom, were found near him, together with a gun, and two empty shells. There was evidence that he had been drinking, was intoxicated and acted queer.

Of the thirteen errors assigned we shall consider only those argued and which appear under four heads, namely: (1) The court erred in refusing to give defendant's requested instruction No. 2; (2) the court erred in not giving defendant's requested instruction No. 1; (3) the court should have granted defendant's motion for a new trial on the ground of newly discovered evidence; (4) the court erred in not granting defendant's motion for a directed verdict at the close of the trial.

Defendant's tendered instruction No. 2, which the court refused to give, was to the effect that while voluntary drunkenness is no excuse for crime, still it may be considered by the jury for the purpose of determining intent to commit the crime charged. This feature of the case was fully covered by the court's instructions numbered 9 and 10, which were more favorable to defendant than those requested. In given instruction No. 9 the court followed the language of the pertinent part of section 10, chapter 48, '35 C. S. A. Instruction No. 10 is as

follows: "If you believe that Seth McPhee was so under the influence of an intoxicating drink as to be incapable of forming in his mind any intent whatever before and at the time he is alleged to have committed the offense charged, you shall find him not guilty, or if you have a reasonable doubt as to whether or not he was so under the influence of an intoxicating drink as to be incapable of forming in his mind any intent whatever before and at the time he is alleged to have committed the offense charged, you shall find him not guilty." Counsel for defendant cite *Brennan v. People,* 37 Colo. 256, 86 Pac. 79, in support of this assignment. In that case we held that it was reversible error in a trial for murder to give an instruction in the language of the court's instruction No. 9, supra, without also instructing the jury that drunkenness might be considered for the purpose of determining whether the defendant was capable of forming a willful, deliberate and premeditated design to take life. In giving instruction No. 10, the court fully instructed the jury in this respect, and the case of *Brennan v. People, supra,* is, therefore, not in point. The court committed no error in refusing to give defendant's requested instruction No. 2.

■■ One of the defenses in this case was based upon the plea of not guilty by reason of insanity. Defendant's refused instruction No. 1 is a definition of sanity as given in Webster's dictionary. The court fully instructed the jury on this feature of the case, and no objection was made to the giving of such instructions. Under the established rule, the assignment on this point calls for no further consideration. The court also, following the language of sections 2 and 3, chapter 48, '35 C.S.A., instructed on intent, and who should be considered as being of sound mind. Under these circumstances, the question raised by the tendered instruction was correctly covered by the court in instructions 4 and 11. It is very doubtful whether defendant's tendered instruction No. 1 is a correct statement of the law, as

applied to the defense of insanity in a criminal case, a question which we do not decide. We think, however, that the giving of this refused instruction would have confused rather than assisted the jury in its consideration of the issue of insanity. Its refusal was not error.

■ The next assignment relates to a motion for new trial on the ground, among others, of newly discovered evidence. The alleged new evidence upon which the motion is based relates to physical conditions in the toolroom, where it is asserted the burglary was committed and where defendant previously had worked. The facts claimed to be newly discovered were within defendant's knowledge at the time of trial. The court committed no error in denying the motion on this ground. *Klink v. People,* 16 Colo. 467, 27 Pac. 1062; *Gasper v. People,* 83 Colo. 341, 265 Pac. 97.

■ Lastly, defendant assigns error to the action of the court in denying his motion for a directed verdict at the close of the trial. It is asserted, in support of this motion, that the prosecution had failed to prove defendant guilty beyond a reasonable doubt. The statement of the facts above set out sufficiently indicates that the issues were properly for the determination of the jury; consequently this assignment must be overruled.

Finding no prejudicial error in the record, the judgment is affirmed.