22CA1268 Peo v McCall 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1268
City and County of Denver District Court No. 20CR5454
Honorable Christopher J. Baumann, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jacob L. McCall,

Defendant-Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jacob L. McCall, appeals his judgment of conviction entered after a jury found him guilty of felony second degree assault (strangulation) and misdemeanor third degree assault.  We reverse and remand for a new trial.

## I.    Background

¶ 2    According to testimony at trial, McCall and K.S. were in an intimate relationship and lived together in McCall's apartment.  One night, after an argument, McCall accused K.S. of cheating and slapped her twice across the face.  He pushed her down to the floor by the back of her head.  After K.S. got up, he put both arms around her neck and restricted her breathing.  He then lifted her up by her neck and slammed her against the ground multiple times.  After McCall stopped, K.S. ran out of the apartment and went to a friend's home, where she and her friend called the police.  McCall was charged with second degree assault (strangulation), a felony, and third degree assault, a misdemeanor.

¶ 3    McCall represented himself at trial, and a jury found him guilty of both charges.  The trial court sentenced him to eight years in the custody of the Department of Corrections.

¶ 4     McCall now appeals his judgment of conviction, arguing that the trial court violated his Sixth Amendment rights by (1) finding that he knowingly and intelligently waived his right to counsel and (2) denying his motion for a continuance of the trial date that would have allowed his newly retained counsel to represent him at trial. Because we conclude that the court erroneously found that McCall waived his right to counsel, we reverse the judgment without reaching McCall's arguments concerning the denial of the motion for a continuance.

## II.     Waiver of the Right to Counsel

¶ 5     McCall contends that the trial court incorrectly found that he waived his right to counsel because its advisements under *People v. Arguello*, 772 P.2d 87 (Colo. 1989), were deficient, thus preventing him from knowingly and intelligently waiving his Sixth Amendment rights. We agree.

### A.     Applicable Law and Standard of Review

¶ 6     The Sixth Amendment guarantees criminal defendants the right to counsel. *Gideon v. Wainwright*, 372 U.S. 335, 339-40 (1963); *People v. Schupper*, 2014 COA 80M, ¶ 40. A defendant also has an alternative constitutional right to self-representation. *People*

2

*v. Davis*, 2015 CO 36M, ¶ 15.  The fundamental right to counsel, along with the correlative right to self-representation, is considered essential to a fair trial.  *Arguello*, 772 P.2d at 92.

¶ 7    Due to the importance of the right to be assisted by an attorney at trial, before a defendant is allowed to proceed without an attorney, he must first make a valid waiver of that right.  *Id.* Waiver may occur expressly or implicitly based on the defendant's conduct.  *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006).  Under either circumstance, we must ascertain whether, under the totality of circumstances, a defendant's conduct evinces a voluntary, knowing, and intelligent waiver of the right to counsel.  *Id.*

¶ 8    A waiver is knowing and intelligent when the defendant "understands 'the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"  *Arguello*, 772 P.2d at 94 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948) (plurality opinion)).  We must consider not only the "on-the-record advisement" but also "the whole record" in ascertaining the validity

of the asserted waiver. *Id.* at 96. The unconstitutional denial of the right to counsel is a structural error requiring reversal. *People v. Waller*, 2016 COA 115, ¶ 23, 872; *see Hagos v. People*, 2012 CO 63, ¶ 10.

¶ 9 "Whether a defendant effectively waived the right to counsel, and therefore can exercise the right to self-representation, is a mixed question of fact and law." *People v. Lavadie*, 2021 CO 42, ¶ 22. "On appeal, we 'accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo.'" *Id.* (citation omitted).

## B.   Procedural History

¶ 10 At his first appearance, McCall said that the public defender's office had notified him that an attorney would be appointed to represent him, but a public defender who appeared "as a courtesy" informed the court that McCall had not completed the requisite paperwork. At his second appearance, which took place the next week, McCall reported that he did not qualify for a public defender but was attempting to hire an attorney. The court pushed the arraignment back two more weeks but told McCall that if he failed

to retain counsel by that time he be given "what's known as an *Arguello* advisement," after which the court would "accept [his] plea, set some dates, and . . . advance [the] case."

¶ 11 At McCall's third appearance two weeks later, he again informed the court that he had not been able to retain counsel. Observing that the case had "been pending a long time," the court told McCall, "I'm going to provide you with an *Arguello* advisement and . . . go ahead and set some dates, take your plea, and move this case along." This procedure, the court said, would give McCall some additional time "to hopefully retain counsel or speak with the district attorney about a potential disposition."

¶ 12 The court then advised McCall as follows:

> You have the right to be represented by an attorney throughout these proceedings. If you can't afford an attorney and you qualify as indigent . . . an attorney will be provided to you and it doesn't sound like that's the case. Again, you can continue to speak with them or [if] your financial position changes, I'll consider appointing counsel for you. They can provide you with a list of counsel who charge less than most in the community.

¶ 13 Without inquiring whether McCall understood the statement it had just read, the court asked McCall whether he had any legal

5

training and also inquired if he was currently under the influence of any drugs, alcohol, or medication. In response to the court's inquiry whether he had any legal training, McCall responded, "No, very little." McCall also denied being under the influence of any substances. The court continued,

> I'm advising you that criminal law is a complicated area, that an attorney trained in this field could be of great help to you, that you understand.
>
> You have the right to . . . remain silent and anything you say can be used against you in court.
>
> You have the right to represent yourself but in doing so, you take a great risk and that's not something I recommend.
>
> You have the right to confront witnesses against you and cross-examine them.
>
> You have a right to have witnesses that you choose compelled to appear and testify on your behalf.
>
> You must exercise diligence in pursuing your right to counsel by either making application to the public defender or other counsel — private counsel, and your failure to exercise this right can result in a constructive waiver.
>
> With that, do — how do you plead, sir, to the charges . . . [?]

¶ 14    McCall then pleaded not guilty to both charges.  At no point did the court ask him whether he understood the rights and responsibilities associated with self-representation that it had just described.

¶ 15    Several months later, McCall told the court he was working with the public defender's office due to a change in his financial situation.  He then appeared with Public Defender Betsy Atkinson.  His initial not guilty plea was withdrawn, and the case was reset for arraignment with counsel.  McCall entered a new not guilty plea in May 2021, and trial was scheduled for October of the same year.

¶ 16    Three weeks before the trial date, Jeffery A. Wolf, a private attorney, filed a "conditional entry of appearance" on McCall's behalf.  The entry of appearance was conditioned on the district court's disposition of a motion to continue the trial, which Wolf filed the same day.  The motion for a continuance — which the prosecution did not oppose despite an objection from the victim — said that Wolf was unavailable on the scheduled trial dates and that he would, in any event, need more time to prepare for trial.  Wolf represented that McCall was "willing to waive his speedy trial in

order to effectuate [the proposed] change of counsel." The court summarily denied the requested continuance.

¶ 17 After the court denied the motion to continue, Wolf filed a motion to withdraw, representing that his relationship with McCall had "become adversarial," and that he would "not be able to ethically and adequately represent [McCall] given the current nature of the relationship and due to the Court's order denying the motion to continue."[1] Once Atkinson learned of private counsel's withdrawal, she filed her own motion to withdraw due to a conflict of interest, explaining that there had been a breakdown in communication between herself and McCall that prevented her from representing him effectively.

¶ 18 A short time later, McCall appeared before a different judge for resolution of Atkinson's motion to withdraw. *See People v. Bergerud*, 223 P.3d 686, 694-95 (Colo. 2010) (holding that a court must conduct a hearing, at which both attorney and client testify,

---

[1] It appears that the trial court never ruled on the motion to withdraw. But Wolf's entry of appearance was expressly conditioned on the court granting the motion to continue. Thus, while it was likely prudent for Wolf to create a clear record by formally filing a motion to withdraw once the continuance was denied, it is unclear whether formal withdrawal was necessary.

to adjudicate a defendant's assertion that his appointed attorney cannot or will not completely represent him). At the hearing, McCall asserted that he wanted to represent himself because of a disagreement over trial strategy. The *Bergerud* judge granted Atkinson's motion to withdraw without deciding whether a breakdown in communication prevented her from providing adequate representation. The *Bergerud* judge told McCall that the trial judge would provide an *Arguello* advisement to ensure that McCall was voluntarily, knowingly, and intelligently waiving his right to counsel.

¶ 19 The following day, McCall appeared pro se at the pretrial conference, but the court did not give him an *Arguello* advisement.

¶ 20 On the first day of the trial, McCall appeared pro se with his wife acting as his "assistant."[2] Before voir dire, McCall notified the

---

[2] Before beginning the trial, the court barred McCall's wife from assisting him because she was not a licensed attorney. However, she should not have been permitted to speak on his behalf at all. *See Watt, Tieder, Killian & Hoffar v. U.S. Fid. & Guar. Co.*, 847 P.2d 170, 173 (Colo. App. 1992) (In determining "whether a particular activity amounts to the unauthorized practice of law," the "basic and initial question must always be whether the individual's appearance is in a representative capacity to protect, enforce, or defend the rights or duties of someone else.").

court that, among other issues, he had not received an *Arguello* advisement.  The court disagreed, explaining that it had provided the advisement in January.  The court also — mistakenly — told McCall that the *Bergerud* court had provided an *Arguello* advisement at the time that it allowed Atkinson's withdrawal.  McCall continued to argue the point.  Although many of his statements on the issue appeared to conflict with one another, he consistently maintained that neither the trial court nor the *Bergerud* court had gone through "what he was potentially giving up by self-representation."

¶ 21    The trial court reiterated that McCall received an *Arguello* advisement at the January 28, 2021, arraignment hearing and that McCall had "elected to proceed pro se at that point in time."  McCall again asserted that he "never got a copy of the *Arguello* statement" when he "became [his] own attorney" and that the *Bergerud* court stated that the trial court was "supposed to read it."  McCall persisted, asserting he "really ha[d] to have the *Arguello* statement in writing from this Court" and that he needed it before proceeding because "[he] d[id]n't know what [wa]s going on really."

¶ 22    The court acquiesced, explaining that it was "redundant at this point" and "stale in that [McCall] had months and months and months." The trial judge then summarized his prior *Arguello* advisement, telling McCall,

> [I] read to you on the record that you have the right to be represented by counsel throughout these proceedings. If you can't afford an attorney and you qualify as indigent under the supreme court lines [sic], counsel will be provided to you free of charge.
>
> I reviewed the charges with you. I asked you whether you are under the influence of drugs, medication, or alcohol. You advised me no. I accepted your plea.
>
> I advised you that understanding criminal law is a complicated area and that an attorney trained in the field could be of great help. I advised you that you have the right to remain silent, and anything you say can be used against you in court. You have a right to represent yourself, but in doing so, you take great risk of not properly presenting your case.
>
> You have the right to confront witnesses against you and cross-examine them. You have the right to have witnesses you choose compel to appear and testify on your behalf.
>
> I further advised you that you must exercise diligence in pursuing your right to counsel whether making application to the public defender's office or contacting private counsel to represent you.

> Finally I advised you failure to exercise diligence in seeking counsel can at some point constitute constructive waiver of your right to counsel. You have counsel. Your *Bergerud* motion was denied. You have very competent counsel.
>
> You fired her shortly before trial and elected to proceed, and I find that you have constructively waived your right to counsel, as I so advised you when I first accepted you not guilty plea in this case. We are proceeding.

### C. Analysis

¶ 23 The record does not establish that McCall knowingly and intelligently waived his Sixth Amendment right to counsel, either expressly or implicitly.

¶ 24 At the outset, the trial court's January 28 *Arguello* advisement failed to inform McCall that he would be representing himself going forward. To the contrary, even though McCall said he was trying to find an attorney at the time, the trial court explained it was providing an *Arguello* advisement because it "need[ed] to move" McCall's case along. The court failed to confirm that McCall understood its *Arguello* advisement as apprising him of his Sixth Amendment right to counsel and the potential pitfalls of proceeding pro se. Instead, the record reflects — outside of two yes or no

12

questions relating to McCall's legal training and current mental acuity — that the court's *Arguello* advisement was more of a monologue rather than a verification that McCall was making a "knowing and informed decision" to forgo counsel. *Arguello*, 772 P.2d at 95. Indeed, the court never asked McCall whether he understood the list of rights that it had just read, nor confirmed that McCall wished to represent himself.

¶ 25 The trial court's advisement also omitted key portions of the recommended "Colorado Trial Judges' Benchbook" inquiry. *See Arguello*, 772 P.2d at 98 (endorsing the practice of asking a series of questions appearing in the Colorado Trial Judge's Benchbook to ensure a defendant validly waives his right to counsel). Specifically, the court did not inform McCall about the range of penalties he faced, of his right to consult with a public defender about his decision to forgo counsel, or of his right to court-appointed advisory counsel. Aside from a brief question about his legal experience, the court failed to inquire into McCall's education level and did not explore whether McCall understood the "possible defenses to [his] charges and circumstances in mitigation thereof." *Id.* at 94 (quoting *Von Moltke,* 332 U.S. at 724).

¶ 26    The record reflects that McCall did not understand many of the issues that the trial court omitted from the abbreviated *Arguello* advisement it provided at McCall's third appearance.  For example, nothing in the record indicates that the court ever advised McCall of the potential penalties he was facing, much less that he could be subject to an aggravated sentence of between five and sixteen years.  Likewise, McCall's attempt to rely on his wife as an "assistant" at trial — which the court forbade once it realized she was not a licensed attorney — suggests that McCall might well have requested advisory counsel had he been informed of the possibility.  And McCall's conduct at trial betrayed a fundamental lack of knowledge about procedural requirements, the rules of evidence, and the legal system in general.

¶ 27    These shortcomings were not remedied by the trial court's recap of the faulty *Arguello* advisement on the first day of trial.  Despite McCall's insistence that he "d[id]n't know what is going on," the court did not engage in a colloquy with McCall to assess the situation.  To the contrary, it simply paraphrased the incomplete statement that it had provided at McCall's third appearance, deemed McCall's conduct a constructive waiver of the right to

counsel, and declared that it would be moving forward with the trial as scheduled.  Moreover, the court's ruling was premised on its erroneous assumption that McCall had received a separate *Arguello* advisement at the *Bergerud* hearing.

¶ 28    "A court's failure to comply substantially with [the Colorado Trial Judges' Benchbook's recommended inquiry] does not automatically render the waiver invalid[] but is an exception which should rarely be invoked."  *Arguello*, 772 P.2d at 96.  Under the circumstances here — where McCall's actions throughout the proceedings indicated he did not fully understand that he was entitled to the aforementioned information and rights, let alone that he waived them — we conclude that we cannot overlook the advisement's shortcomings.  *See People v. Stanley*, 56 P.3d 1241, 1245 (Colo. App. 2002) (explaining that the record as a whole must establish the defendant knowingly and voluntarily undertook a course of conduct showing an unequivocal intent to abandon legal representation for an implied waiver to be valid).

¶ 29    Moreover, given the inadequate *Arguello* advisements, we cannot conclude that McCall's actions amounted to a constructive Sixth Amendment waiver.  *See Stanley*, 56 P.3d at 1245 ("Where the

15

advisement has been found deficient, courts rarely recognize an implied waiver."). True, at the *Bergerud* hearing, McCall stated he "[knew] the law very well," that he "want[ed] to go defend [himself]," and that he was "requesting to defend [himself] today." He also insisted that he wanted to discharge his public defender. But McCall made those statements and took that position without the benefit of a full *Arguello* colloquy. A thorough advisement from either the *Bergerud* court or the trial court might well have given McCall pause about his relationship with appointed counsel, led to second thoughts about taking on the task of self-representation, or caused him to accept advisory counsel. *See Arguello*, 772 P.2d at 97 (A defendant's "conduct, though far from exemplary, cannot be considered a valid waiver of his right to counsel in the absence of proof that he was adequately informed so as to understand the consequences of his actions.").

¶ 30     Because McCall was never provided an adequate *Arguello* advisement, and because the record does not support a conclusion that he "understood the nature of the charges, the statutory offenses included within them, the range of allowable punishments, the possible defenses to the charges and circumstances in their

mitigation, and all other facts essential to a broad understanding of the whole matter," *Lavadie*, ¶ 48, we conclude that he did not knowingly and intelligently waive his Sixth Amendment right to the assistance of trial counsel.  Because the error is structural, *see Arguello*, 772 P.2d at 97, we must reverse.

### III.   Disposition

¶ 31    McCall's judgment of conviction is reversed, and the case is remanded for a new trial.

JUDGE J. JONES and JUDGE SCHUTZ concur.